JAMES M. HANNAN, Respondent, v. KANSAS
CITY, Appellant.

Kansas City Court of Appeals, February 15, 1915.

1. **DAMAGES: Municipal Corporations.** This action was instituted
by plaintiff to recover damages caused by the negligence of
defendant, city, in maintaining a public sewer. The plaintiff's
horse was fatally injured and certain articles of inanimate
personal property were lost by a sudden inundation of the
property he occupied as a residence. *Held*, that if negligence
of the city in failing to keep the sewer in proper repair concurs
with a natural force to produce the injury, the city is liable,
but, if the superior force would have produced the damage
whether the defendant had been negligent or not, its negligence
is not deemed the cause of the injury.

2. **INSTRUCTIONS: Unusual and Extraordinary Rainfall.** An in-
struction is not erroneous which states "your verdict will be
for the defendant, even if you find from the evidence that
there were defects at the place where it broke, which con-
tributed to the cause of the break. If you further find from
the evidence that the usual rainfall would have caused the
break and injury to plaintiff's property just the same whether
such defects had existed or not," then the verdict for plaintiff
is consistent with this instruction.

Appeal from Jackson Circuit Court.—*Hon. O. A.
Lucas*, Judge.

AFFIRMED.

*A. F. Evans* and *Francis M. Hayward* for appel-
lant.

The court erred in not giving the peremptory in-
struction asked by defendant at the conclusion of all
the evidence in the case. Gulath v. St. Louis, 179 Mo.
38; Brash v. St. Louis, 161 Mo. 433, 438.

*Eugene Batavia* for respondent.

(1) Under the law and the evidence, the court
properly submitted the case to the jury. It could
not do otherwise. Haney v. City of Kansas, 94 Mo.

334, 337; Woods v. City of Kansas, 58 Mo. App. 273, 280; Brash v. St. Louis, 161 Mo. 433, 438-440. (2) Instruction 3 asked by defendant and given by the court stated the law applicable to the issues in a manner most favorable to the defendant. The issues submitted by said instruction were for the jury and not for the court to determine. Haney v. City of Kansas, 94 Mo. 334, 337; Woods v. City of Kansas, 58 Mo. App. 273, 280; Brash v. St. Louis, 161 Mo. 433, 438-440.

JOHNSON, J.—This is an action to recover damages alleged to have been caused by negligence of defendant city in failing to maintain a public sewer in proper repair. The defense, in substance, is, that the sewer was constructed by the city in 1901, according to plans adopted by the city while acting in its governmental capacity, that ordinary care was observed in maintaining it in proper repair, and that the damage sustained by plaintiff was caused solely by an extraordinary rainstorm of such unusual violence as to fall within the legal definition of an act of God. Plaintiff recovered judgment in the circuit court and the cause is before us on the appeal of defendant.

The damages claimed by plaintiff consisted of the fatal injury of his horse and the loss of certain articles of inanimate personal property caused by the sudden inundation of the property he occupied as a residence. The rear end of the lot was submerged to a depth of twelve or fourteen feet, the barn thereon was swept away and the property in question, being in the barn, was destroyed with it.

The residence of plaintiff was known as 2514 Campbell street and was on the west side of that street. The lot is 130 feet south of the intersection of Campbell and Twenty-fifth streets, runs west to an alley, being 160 feet in length, and is much lower at the rear end on which the barn was situated. At the time of the injury Campbell street, which runs north

and south, was neither graded nor paved. From its intersection with Twenty-sixth street north, to a point about two-fifths of the distance to Twenty-fifth street, it ran down hill from an.elevation of nearly 200 feet to one of 172-173 feet, thence up-grade to an elevation of 182-183 feet at Twenty-fifth street.

It will be noted from these topographical features that there was a low area or, as the witnesses speak of it, "a draw," in the block between Twenty-fifth and Twenty-sixth streets. The lowest part of this depression extended from the west line of Campbell street at the place of its lowest elevation in a northwesterly course to the alley and covered the rear end of plaintiff's lot. In 1901 the city constructed a sewer system in that vicinity according to a general plan. One of the lateral sewers, of vitrified clay pipe twenty-four inches in diameter, diverged from the main sewer at a point on Twenty-fifth street west of the alley we have referred to, ran east to Campbell street, thence south along the middle of that street to Twenty-sixth street and thence east. From Twenty-sixth to Twenty-fifth street, this sewer had a fall of eight or ten feet and crossing the swale was laid on a wall of masonry 190 feet in length. At the lowest place in the street this wall was five or six feet high. There were catch basins at the alley, the corner of Twenty-fifth and Campbell streets and the corner of Twenty-sixth street.

The negligence charged in the petition is "that defendant city wholly neglected to keep said sewer, openings and catch basins, described as aforesaid, in proper repair; but carelessly and negligently permitted the said sewer, openings and catch basins to become cracked, displaced, dammed up, choked and obstructed as aforesaid; that said defendant city knew, or by the exercise of ordinary and reasonable care could have known, the defective condition of said sewer and openings and catch basins, as aforesaid, in time, by the exercise of ordinary and reasonable care, to

have made, or caused to be made, the necessary repairs to said sewer, openings and catch basins, and remove, or cause to have removed, the obstructions, therein, as aforesaid, before the happening of the damage herein complained of, but which it negligently failed to do."

The evidence of plaintiff tends to show that there were cracks in the masonry wall, and that at places the sewer pipe was exposed and had cracks in it and some large holes on or near the top. These defects had existed a long time, and the tenants of the houses on the west side of Campbell street had complained to the owner who repeatedly, at monthly intervals, had complained to the city officers in charge of such matters who on every occasion promised to repair the sewer. The principal ground of complaint was the obnoxious odors that emanated from the cracks and holes. There had been some severe rainstorms while the sewer was in this defective condition but it had carried off the surplus waters and the depression had not been flooded.

June 8, 1910, a rainstorm of great severity began shortly after noon. The violent precipitation was not of long duration but while at its height .54 of an inch of water fell in five minutes, and 1.90 inches in thirty minutes. The total precipitation for the day was 3.26 inches. Compared with other rainfalls in Kansas City it was not unprecedented, though it might be classed as unusual in the sense of being infrequent. The heaviest rainfall recorded by the weather bureau in the period following the construction of the sewer occurred August 23, 1906, when 5.93 inches of water fell during the day and at one time .58 of an inch fell in five minutes and 3.08 inches in thirty minutes. On July 15, 1907, 4.41 inches fell in a day, of which 3.68 inches fell in two hours and twenty-nine minutes. October 21, 1908, 4.90 inches fell; May 17, 1906, 1.05 inches in forty-two minutes, and June 23, 1906, 1.47 inches in twenty-eight minutes. The superintendent of the weather

bureau at Kansas City introduced as a witness by defendant, testified on cross-examination that a precipitation of one and one-half inches was "not very unusual in a period of from thirty to forty minutes." The sewer carried off the surplus waters from the violent rainfalls we have mentioned and the swale was not flooded even on August 23, 1906, when; as stated, 3.08 inches fell in thirty minutes. Following the heaviest rainfall on the date of the injury but during the storm, the sewer gave way at a place in the line of its exposure and the water poured out and flooded the low ground to a depth of ten to fourteen feet. A number of eyewitnesses, introduced by plaintiff so testified, and their testimony tends to show that the inundation was caused by the breaking of the sewer and would not have occurred if the sewer had not succumbed to the strain. We cannot say, as a matter of law, that this evidence is unreasonable and should be discarded as worthless. The fact alone that no disaster accompanied the terrific rain of August 23, 1906, is most persuasive evidence that the sudden inundation which followed a precipitation of much less severity was caused, not by the rush of waters down the "draw" but by the outpouring from the broken sewer.

We have stated evidentiary facts in their aspect most favorable to the pleaded cause as we should do in our consideration of the argument that the court erred in not directing a verdict for defendant. The jury were entitled to infer from the evidence that the flood was caused by the breaking of the sewer and not by a natural phenomenon. We are aware that the Supreme Court in Gulath v. City of St. Louis, 179 Mo. 38, held as a matter of law in a case where a rainstorm of less severity than that under consideration caused the injury that the plaintiff had no cause of action against the city. But in that case there was no proof of any negligence of the city in maintaining the sewer that might have contributed with the natural

cause to produce the injury. The cause asserted by the plaintiff, in reality, was founded on an alleged defective plan for the construction of the sewer. The defendant argued that the question of whether or not the plan was sufficient was a governmental question, from the solution of which by the city, no actionable negligence could be predicated, while the plaintiff contended for the rule that "a city is liable if it fails to exercise ordinary care in the adoption of plans for a sewer . . . which turns out to be insufficient to drain the territory connected with it."

The court declined to go into this question for the reason that no ground appeared on which the claim of a negligent or defective plan could be based. Finding proof neither of negligence in the plan nor of negligence in the maintenance of the sewer, the conclusion was reached that "if the city could be held liable under circumstances like those present in this case, it would practically be to say that the city is an insurer against all damages that may arise in any manner whatever, the act of God included. If this was the law no city could afford to build or maintain a sewer at all. Drains would have to be left in their natural condition. And in this case the damage to the plaintiff would have been the same, according to the undisputed testimony in the case, if Mill Creek had never been converted into a sewer."

In the opinion the rule was stated with approval that if negligence of the city in failing to keep the sewer in proper repair concurs with a natural force to produce the injury, the city is liable, "but if the superior force would have produced the same damage whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." [Brash v. St. Louis, 161 Mo. l. c. 438, and authorities cited; see also Haney v. City, 94 Mo. 334; Woods v. City, 58 Mo. App. 273.]

The duty of a municipal corporation to maintain its sewers in a reasonably safe condition is ministerial, is that of ordinary care, and a negligent breach thereof which causes or directly contributes to an injury is actionable.

The cause of action asserted by plaintiff does not reach into the subject of the exercise of the powers and duties of government but is based solely on negligence in the failure of the city to perform its ministerial duty to maintain the sewer in a proper state of repair. The evidence, as we have stated, shows the existence of such negligence and that it was a proximate and concurrent cause of the injury. It excludes the inference that the sewer would have burst under the strain to which it was subjected, if it had been in reasonable repair and that the natural cause would have produced the injury without the concurrence of the negligent cause. Such being the state of case presented by the pleadings and evidence of plaintiff, the court acted properly in overruling the demurrer to the evidence.

In what we have said we have fully answered the argument that the verdict cannot stand with the rule given to the jury in defendant's third instruction which, on the hypothesis that the rainfall was unusual and extraordinary, told the jury "your verdict will be for the defendant, even if you find from the evidence that there were defects at the place where it broke, which contributed to the cause of the break. If you further find from the evidence that the unusual rainfall would have caused the break and the injury to plaintiff's property just the same whether such defects had existed or not." We have shown that the evidence of plaintiff would support an inference that the rainfall, severe and violent as it was, would not have flooded plaintiff's lot and destroyed his property if the sewer had held intact. The verdict was consistent with the instruction.

The judgment is affirmed. All concur.