Anthony **ANELLO** and Josephine Anello,
Plaintiffs-Appellants,

v.

**KANSAS CITY,** Missouri, a Municipal
Corporation, Defendant-Respondent.

No. 22320.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1955.

Clay C. Rogers, James W. Benjamin, Robert L. Shirkey, Kansas City, for plaintiffs-appellants.

David M. Proctor, City Counselor, Kansas City, James H. Coonce, Kansas City, Asst. City Counselor for defendant-respondent.

SPERRY, Commissioner.

Plaintiffs, Mr. and Mrs. Anello, sued defendant City for damages accruing to their store building located at 4118 Prospect, Kansas City, Missouri. They alleged that the damages were caused by a break in defendant's water and sewer lines. They had a verdict and judgment in the sum of $5,000, but the court, on motion, set aside the judgment and entered judgment for defendant. The court also entered an order to the effect that, if the latter judgment should be reversed on appeal, then a new trial should be granted on the ground that the court erred in submitting the case on the theory of *res ipsa loquitur*. Plaintiffs have appealed.

Plaintiffs acquired a plot of real estate located on the west side of Prospect, in Kansas City, in 1945. During the year 1946 they constructed thereon a one story building, of masonry. The building is 40 feet square and was designed for and used as a retail store.

The evidence is to the effect that, some 40 years prior to plaintiffs' acquisition of the real estate, defendant raised the grade of Prospect at this point, and paved it. It was also shown that defendant had, in 1913, constructed a main storm and sanitary sewer running from the east, under Prospect, thence in a northwesterly direction, in which direction the sewage flowed. This is a double line of two 24 inch pipes, and it is connected to the west end of an old stone culvert which extends across Prospect, from east to west, the west end thereof being almost directly beneath the west curb line of Prospect, near the north line of plaintiffs' building, and about 28 feet beneath the surface of the sidewalk. The culvert is about 4 feet square and there was a catch basin, located some 30 feet north, connected therewith by a tile sewer line. The northeast corner of plaintiffs' building extends over the sewer line.

The lot upon which plaintiffs' building was constructed, originally "fell off," or sloped steeply, from the property line toward the west. Long prior to its purchase by plaintiffs the front part of the lot had been filled with dirt, concrete, and other materials, to a depth of 12 or 15 feet and level with the sidewalk. Plaintiffs' building was constructed on this "fill." The foundation extends down about 8 feet and rests on a reinforced concrete footing, 4 feet in width. About 500 pounds of weight, per square foot, rests on the footing.

Prior to the events complained of, plaintiffs' building was in good condition. There were no cracks in the masonry of the walks, or in the floor. On September 15, 1947, plaintiffs heard a loud noise, sounding like an explosion, in front of their building. They went outside to ascertain the cause, and found that the sidewalk had caved in and that there was a cavity extending from about the door, at the center, to the north end of the building, and from the curbing to the building. It was more than 5 or 6 feet deep. A utility pole near the north end of the building had toppled, and the water meter had fallen in. Defendant was notified and its agents immediately inspected the situation. A few days thereafter, a

large crack appeared in the floor, near the center, running east and west the length of the building, and also up the walls. Thereafter, defendant filled the hole and replaced the sidewalk. Its agents were, at that time, shown the cracks in plaintiffs' building.

About a year later a woman, passing over the sidewalk in front of the store, caught her heel in a hole. Plaintiffs inspected the sidewalk and found that there was a cavity under it, similar to that occurring and existing in 1947, and at the same location. Again defendant was notified. It filled the hole and repaired the sidewalk.

In May, 1952, defendant's water meter man came into the store and told plaintiffs that the meter in front of the building had disappeared. Investigation disclosed that there was a cavity under the sidewalk, where the cavities had previously appeared. This cavity was about of the same size and character as that of 1947. The cracks in plaintiffs' building have been caulked and repaired, from time to time, but have persistently grown wider, the doors have become out of line, and other smaller cracks have become visible.

Plaintiffs offered the testimony of Mr. Rush, foreman of defendant's sewer repair crew. He stated that he supervised the repairs made on the occasion of the last cave-in; that there was a cavity, several feet in width, length, and depth, in front of plaintiffs' building, under the sidewalk, and extending under the street; that the repair crew dug down, at this point, a distance of 28 feet; that, as they excavated, they removed the tile leading down from the catch basin; that, eventually, they found that some rocks had fallen from "that old stone culvert that goes under Prospect Avenue where the pipe is hooked onto it," "right around the catch basin line" where it hooked into the sewer; that that was where the dirt was washing away, causing the cave-in; that he turned the fire hose on in the hole while the digging was going on to find out where the dirt went; that the water ran out through the sewer hole as fast as it went in from the fire hose;

that, after the repairs were completed, the culvert was in fair condition "for an old loose stone culvert"; that no sewer pipe was replaced the repairs being made with concrete.

Other workmen gave similar testimony. Some said that the rock appeared to have broken off near the lip of the culvert, but no direct evidence was offered as to what may have caused the rock to break nor as to when that event occurred. One workman stated that the pipe line leading from the catch basin to the stone culvert was also broken. There was testimony to the effect that the culvert was under the surface of the street at the time the street grade was raised, in 1904, and that, when defendant's sewer was constructed, it was connected to the culvert at the point mentioned.

■ There was substantial evidence, from an engineer, offered by plaintiffs, from which it may be inferred that the damage to the building was caused by a washing away of the dirt near the building, through the sewer, thereby weakening its support and causing it to settle unevenly, resulting in its "splitting." There was also evidence, on behalf of defendant, to the effect that the settling of the building was caused from a settling of the filled land upon which the building rests; but plaintiffs' expert witness stated that the settling, which caused the damage, was not due to the "fill." We must assume that the settling was due to the carrying away of the soil, through and by reason of the hole in the sewer, thereby weakening the foundation supports and permitting the foundation to settle unevenly. We must consider the facts in their aspect most favorable to plaintiffs. Hannan v. Kansas City, 187 Mo. App. 315, 173 S.W. 703, 704.

Plaintiffs pleaded that the original damage was caused by the 1947 collapse. Their expert witness gave it as his opinion that the damage occurred at that time, and was then complete; that, while the cracks then appearing had widened, nevertheless, the breakage and damage occurred in 1947. Defendant's expert testimony was to the same effect.

Plaintiffs pleaded facts which, if proved, established a case under the doctrine *res ipsa loquitur.* The pleading was not attacked. The question before us is whether the evidence made a case on that theory.

The definition of that doctrine, as declared in Scott v. The London & St. Katherine Docks Company, 159 Eng.Rep. 665, (1865) is universally accepted, to-wit:

"There must be reasonable evidence of negligence.

"But where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

Our Supreme Court declared, in McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W. 2d 557, 559, 92 A.L.R. 641; the following three conditions as necessary to exist before the doctrine may be applied, to-wit:

"(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care;

"(b) The instrumentalities involved were under the management and control of the defendant;

"(c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence."

Shain, Res Ispa Loquitur, Presumption and Burden of Proof, page 5, states that the "thing" which speaks is the unusual factor within the causal chain, which connects the injury to the plaintiff with the act or omission of the defendant; and that it speaks *at the trial of the case,* when:

"(a) The 'thing' is part of a causal chain which connects the injury to the plaintiff to the act or omission of the defendant; and

"(b) The 'thing' is within the exclusive control of the defendant; and

"(c) The 'thing' does not ordinarily occur if the one having the exclusive control of the 'thing' uses proper care in exercising that control."

The evidence here discloses, and the jury has found, that the open break in defendant's sewer line is the "thing" that caused plaintiffs' injury. The sewer lines were the property of and were within the exclusive control of defendant. McQuillen on Municipal Corporation, 3rd Ed., Page 33; Donahoe v. City of Kansas City, 136 Mo. 657, 667, 38 S.W. 571. A negligent breach of defendant's duty to maintain its sewers in a reasonably safe condition is actionable. Hannan v. Kansas City, supra, 187 Mo.App. 315, 173 S.W. 703, 705.

To make a "res" case it must also appear that the defects in the sewers causing plaintiffs' injury were such as to permit an inference that *defendant* was negligent in some manner. The jury could have inferred that defendant was negligent in adopting a "loose" stone culvert as a part of its sewer system; or that it was negligent in some manner in failing to inspect and maintain same in reasonably good repair, knowing of the nature of its construction; that defendant should have anticipated some such breakage or failure after 34 years of use; or that, since the breakage could have occurred months before the cave-in occurred in 1947, defendant was negligent, in not discovering and repairing same before plaintiffs' property was injured thereby.

In Russell v. St. Louis & S. F. R. Co., Mo.App., 245 S.W. 590, 591, it was said:

"The doctrine of res ipsa loquitur is a rule of evidence and applies only when the facts are such that the court can and will take judicial notice that, unless negligence had been present in *some* form, the injury would not have occurred, * * *." (Italics ours.)

Under the facts in evidence here we will take judicial notice that, absent neg-

ligence in *some* form, the injury herein would not have occurred. Whether such negligence was in the fact that the City adopted and used, as a part of its sewer system, an "old loose stone culvert" some 34 years prior to the occurrence; or whether it be in the fact that the breakage occurred in some way and the sewer remained in such broken condition for months or years, in disrepair (when it was defendant's duty to exercise reasonable care to maintain it in a reasonably safe condition); or whether it was broken through some negligence on the part of defendant's agents, we cannot say. From the facts in evidence, however, it appears that the sewer remained open for months, perhaps years, prior to the collapse of the earth in front of plaintiffs' building, in 1947.

The burden of going forward with evidence tending to explain the matter, rested on defendant. It offered no evidence on that subject and, therefore, the jury was justified in inferring that the injury was due to some negligence on the part of defendant. McCloskey v. Koplar, supra, 329 Mo. 535, 46 S.W.2d 557.

Defendant contends that no submissible case was made by plaintiffs because there is no evidence that defendant had notice of the defect in time, thereafter, to have remedied same. This being a *res ipsa loquitur* case no notice was required. McCloskey v. Koplar, supra, 329 Mo. 536, 46 S.W.2d 557.

Defendant also contends that the defect was a latent one, for which it is not liable. This contention is one that should have been directed to the jury. Defendant offered no evidence on the point. But if it had done so, nevertheless, the court must have submitted the case, because a prima facie case was made under the *res* doctrine. McCloskey v. Koplar, supra; Lober v. Kansas City, Mo.Sup., 74 S.W.2d 815, 823.

Defendant contends that the *res ipsa loquitur* doctrine applies to but two classes of cases, of which the present case is not one. Defendant's contention may not be sustained under the present state of the law. The doctrine has been applied to a wide variety of cases including falling objects, food and beverages, electricity, machinery, common carriers, private automobiles and aeroplanes, mal-practice, escaping water and gas, fires, etc. Shain-Res Ipsa Loquitur, supra, Table of Contents. It would be difficult to enumerate all of the situations to which the doctrine is applicable, since the field has been greatly broadened in recent times.

It is urged that where there are two or more causes that might have produced the injury, for one but not for all of which, defendant is liable, no case is made. It is good law; but where, as here, the jury, upon substantial evidence and proper instructions has found the cause to be one for which defendant is liable, that rule has no application.

It is also contended that plaintiffs are not entitled to the benefit of the "res" rule because they proved the specific cause of the injury. That contention must be denied because plaintiffs offered no evidence as to how or when the sewers became defective. They merely showed the existence of the defects and, by inference, that same had existed for a long period of time.

The judgment should be reversed and the cause remanded with directions that the original judgment, in favor of plaintiffs, in the amount of $5,000 be reinstated.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions that the original judgment, in favor of plaintiffs, in the amount of $5,000, be reinstated.

All concur.