**Affirmed and Opinion Filed September 16, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00831-CV

**MERITAGE HOMES OF TEXAS, L.L.C. D/B/A MONTEREY HOMES, Appellant**

**V.**

**JU-AN RUAN AND MING-WU, ZIN-ZHAO AND XINRAN WANG, QUISHEN TANG AND QUN REN, AND WINDON AND MELODY CHAU, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-00490**

## MEMORANDUM OPINION

Before Justices Francis, Myers, and Lewis
Opinion by Justice Francis

Meritage Homes of Texas, L.L.C. d/b/a Monterey Homes appeals the trial court's judgment confirming an arbitration award. Meritage contends the trial court erred by denying its motion to vacate and confirming the award because the arbitrator, Richard Faulkner, failed to disclose prior professional relationships with appellees' lawyers. Alternatively, Meritage asserts the trial court should have granted a continuance to allow additional discovery on the issue. We affirm.

Appellees Ju-an Ruan and Ming-Wu, Zin-Zhao and Xinran Wang, Quishen Tang and Qun Ren, and Windon and Melody Chau purchased homes built by Meritage. When appellees learned their homes had less square footage than represented, they filed a petition for discovery under Texas Rule of Civil Procedure 202. In response, Meritage moved to abate the proceeding

in favor of arbitration as required by the parties' contracts. When the parties could not agree on an arbitrator, the trial court appointed Faulkner.

Although the parties' purchase agreements provided for binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, the parties agreed to forgo AAA administration. After his appointment, Faulkner scheduled a telephone conference for February 25, 2011 to organize and manage the proceedings in the arbitration and sent an agenda for the conference to the parties. No recording was made of the telephone conference. The arbitration was conducted twenty months later, in October 2012. As the proceedings opened, the following occurred:

> [ARBITRATOR FAULKNER]: We'll go ahead and get underway. Before we get going, this case has been around for more than a year, so I think during that time period I've had, what, maybe one or two more arbitrations with these lawyers. I don't know any of the parties. I don't know your client either. So – but I have met counsel, so if anybody has any objections to that, let me know. Otherwise, I don't know anything about this beyond what you guys have told me in pleadings. Any objections? If – if not, we're going to proceed.
>
> [MERITAGE COUNSEL]: Just one quick question.
>
> [ARBITRATOR FAULKNER]: Sure.
>
> [MERITAGE COUNSEL]: Were any of those arbitrations involved in square footage issues?
>
> [ARBITRATOR FAULKNER]: No.
>
> [MERITAGE COUNSEL]: Okay.
>
> [ARBITRATOR FAULKNER]: I think they were all foundation.
>
> [MERITAGE COUNSEL]: All right.
>
> [ARBITRATOR FAULKNER]: So . . .
>
> [MERITAGE COUNSEL]: No objection.
>
> \* \* \*
>
> [SECOND MERITAGE COUNSEL]: No objection.

Thereafter, four appellee homeowners and a Meritage sales associate testified at the one-day arbitration. On December 28, 2012, Faulkner issued a final award, finding in favor of appellees and awarding them damages and attorneys' fees. Five days later, appellees filed a motion to confirm the award and for post-award attorneys' fees.

On January 10, 2013, Meritage's counsel wrote to Faulkner and, citing to the Construction Industry Arbitration Rules of the AAA, requested him to disclose (1) the number of arbitrations he had with appellees' attorneys Brent Lemon and Robert Grisham since November 17, 2010, the date Faulkner was appointed in this case; the dates of those arbitrations; and whether Lemon, Grisham, or both were involved, and (2) "any past or present relationships" with Lemon or Grisham, "including but not limited to any other service as an arbitrator or mediator" in matters in which Lemon, Grisham, or their firms or prior firms served as counsel, and any other business, familial, or social relationships.

Faulkner responded by letter one week later, noting that had the parties used AAA administration, there would have been "a plethora of disclosure forms on file." By avoiding the cost of a AAA administration, Faulkner said the parties waived the AAA's role "related to disclosures and challenges." Faulkner further recounted that although no party asked for any disclosure information during the entire "multi-year period," he addressed the issue before the arbitration hearing began and no one objected.

Faulkner then provided information from November 2010 forward, disclosing that he was involved in three arbitrations and one mediation with Lemon and/or Grisham. Specifically, he stated that Grisham was involved in two arbitrations in 2011, both were "documents only," and no hearings were held or witnesses presented. Grisham was also involved in a mediation in 2011, where he was appointed by the court, not selected by counsel. Lemon participated in one arbitration in 2012. Faulkner also stated that he knew the attorneys professionally but did not

have a relationship with them. Finally, Faulkner stated he has not been co-counsel with either, does not socialize with them, has never been to their homes, and did not "even know where their offices are." He did not provide any information prior to November 2010.

Meritage responded to the information, again by letter, by explaining that its request for information regarding "any other service" as an arbitrator or mediator in matters in which Lemon, Grisham, or their firm or prior firms were involved was "not limited in time." Meritage sought a "prompt response."

In response, Faulkner pointed out Meritage had not paid the outstanding arbitration invoice. He then stated his staff "spent considerable uncompensated time assembling the information responding to your prior request." Faulkner stated that when the invoice is paid, "I will be willing to entertain any reasonable requests as long as my staff is paid for the time incurred." Meritage did not further pursue the matter with Faulkner.

On February 14, Meritage filed its opposition to the motion to confirm the award and cross-motion to vacate the award. Relying on the Texas Arbitration Act, Meritage argued the award should be vacated for evident partiality because Faulkner failed to disclose all of his prior professional dealings with appellees' lawyers. Specifically, Meritage complained the arbitrator's "last-minute, untimely disclosure" at the beginning of the arbitration hearing was "inaccurate and incomplete" because Faulkner conducted three arbitrations and a mediation with appellees' lawyers during the pendency of this case, instead of the "maybe one or two" he disclosed. Meritage also complained that Faulkner "to date, has refused to identify his professional connections" with Lemon and Grisham that existed prior to his appointment.

Meritage attached evidence to the motion. The evidence included the post-arbitration correspondence between Faulkner and Meritage's counsel, and the affidavits of two of its attorneys, Matthew P. Whitley and David W. Jones. Whitley attested that he participated in the

–4–

initial telephone conference on February 25, 2011, and Faulkner "specifically informed the parties that he had no conflict that would prevent him from serving in this case." He further attested that "[a]t no time prior to or during the conference did the [a]rbitrator disclose any business, personal, or professional connections with any of the parties or their counsel." Jones asserted, among other things, that since the final award, he had "been informed of at least three other instances" in which Faulkner, prior to his appointment, "was appointed to serve as an arbitrator in matters in which Brent Lemon acted as counsel."

The trial court conducted a hearing on the motions and heard arguments of counsel. No additional evidence was presented. At the conclusion of the hearing, the trial court notified the parties he would have a decision that day.

Some hours after the hearing ended, Meritage filed supplemental evidence without leave of court. The filing contained an additional 332 pages of documents, including the affidavit of Gregory A. Harwell, an attorney with Gardere Wynne Sewell LLP. Harwell attested that Faulkner was the arbitrator in three matters with Lemon, Grisham, or both, in the years 2003, 2005, and 2006. None of these matters were resolved by an arbitration hearing. In the 2003 case, Lemon represented the claimants. One day of the hearing was conducted, but the matter was resolved prior to any award. In the 2005 case, Lemon represented the claimants. The parties had communicated with Faulkner to arrange a hearing, but the matter was resolved without a hearing. In the 2006 case, Lemon and Grisham represented the claimants. Faulkner heard pre-trial matters for more than a year, but the matter was also resolved without a hearing.

The trial court signed an order that same day, denying Meritage's motion to vacate. The trial court also rendered final judgment in accordance with the arbitrator's ruling. Meritage filed a motion for new trial, relying on the evidence attached to its motion to vacate as well as the

supplemental evidence. Following a hearing, the trial court denied the motion.[1] This appeal ensued.

We consider a trial court's decision to confirm an arbitration award de novo based on a review of the entire record. *Karlseng v. Cooke*, 346 S.W.3d 85, 94 (Tex. App.—Dallas 2011, no pet.) (*Karlseng II*). In making this review, we are mindful that arbitration of disputes is strongly favored under both federal and Texas law. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding) (per curiam).

Under the TAA, a trial court is required to vacate an arbitration award if there has been "evident partiality by an arbitrator appointed as a neutral arbitrator." TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(2)(A) (West 2011); *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, No. 12-0789, 2014 WL 2139215, at *5 n.7 (Tex. May 23, 2014). A neutral arbitrator exhibits evident partiality if he does not disclose facts that might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *Tenaska Energy,* 2014 WL 2139215, at *5; *Burlington N. R.R. v. TUCO, Inc.*, 960 S.W.2d 629, 636 (Tex. 1997). In cases such as the one before us, where part but not all of a relationship is disclosed, we examine the undisclosed information together against what was actually disclosed to determine whether the undisclosed information was trivial. *Tenaska*, 2014 WL 2139215, at *7 & n.16. While a neutral arbitrator does not need to disclose relationships or connections that are trivial, the conscientious arbitrator should err in favor of disclosure. *TUCO*, 960 S.W.2d at 637. Evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias. *TUCO*, 960 S.W.2d at 636. The party seeking to vacate an arbitration decision based on evident partiality bears the burden of proof. *Forest Oil Corp. v. El*

---

[1] Appellees attached the affidavit of their counsel, Lemon, to their response to the motion for new trial. In his affidavit, Lemon stated he believed Whitley's affidavit was "inaccurate." Lemon stated the arbitrator "did disclose having participated in arbitrations and mediations" with claimants' counsel, and no one from Meritage, including Whitley, "timely raised any objection or made any inquiry of the [a]rbitrator after such disclosure." At the request of Meritage, the trial court struck Lemon's affidavit as untimely filed.

*Rucio Land & Cattle Co.,* No. 01-13-00040-CV, 2014 WL 3709477, at *13 (Tex. App.—Houston [1st Dist.] July 24, 2014, no pet. h.).

In its first issue, Meritage argues Faulkner failed to fully disclose his professional relationship with Lemon and Grisham, specifically prior arbitrations and mediations. Meritage breaks down the nondisclosures into two time periods: (1) arbitrations/mediations during the pendency of this case and (2) arbitrations prior to Faulkner's appointment in this case. In oral argument before this Court and during the hearing before the trial court, Meritage primarily relied on the first group of nondisclosures to support its contention. Consequently, we begin there.

At the beginning of the October 10, 2012 arbitration hearing, Faulkner recounted that the case had been "around" for more than a year, and during that time, he had "what, maybe one or two more arbitrations" with appellees' lawyers. He specifically asked if there were any objections and indicated the case would not proceed if there were ("If – if not, we're going to proceed."). Meritage's counsel said he had "just one quick question" and then asked Faulkner if the arbitrations involved "square footage issues." When Faulkner said the matters involved foundations, not square footage, both of Meritage's lawyers said they had no objection to proceeding with the arbitration. Faulkner's comment with respect to the number of matters was vague, at best, "what, maybe one or two more arbitrations." The comment, however, was clear as to substance — he had arbitrated cases with the appellees' attorneys while this case was pending. Once given this information, Meritage's sole interest was in the subject matter of the arbitrations. Meritage asked no questions about the precise number of arbitrations, when Faulkner was appointed, or the status of the matters. It was only after the arbitrator's award issued that Meritage asked Faulkner to provide more specific information. Having examined the undisclosed information against what was actually disclosed, we conclude the failure to disclose

–7–

the one arbitration and one mediation would not yield a reasonable impression of the arbitrator's partiality to an objective observer.

In reaching this conclusion, we are unpersuaded that this Court's prior opinions in *Alim v. KBR (Kellogg, Brown & Root)-Halliburton*, 331 S.W.3d 178 (Tex. App.—Dallas 2011, no pet.), and *Karlseng II*, dictate a different result. In *Alim*, the AAA appointed an arbitrator, who responded "No" to a question asking whether any of the party representatives, law firms or parties had appeared before him in past arbitration cases. The arbitrator also attested, under oath, that he had "diligently conducted a conflicts check" and had "performed [his] obligations and duties to disclose in accordance with the Rules of the [AAA], Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures." 331 S.W.3d at 180. Then, at the beginning of the arbitration hearing, he stated he had "over the years come across" KBR's party representative and its attorney. *Id*. At the conclusion of the hearing, the arbitrator ruled in KBR's favor.

Alim then notified AAA that he objected to the award because the arbitrator had failed to disclose his relationship with the opposing party and its counsel. *Id*. The evidence showed that six years earlier, the arbitrator had served as a neutral arbitrator in a matter where KBR's party representative represented an affiliate and that KBR's attorney had met the arbitrator eleven to twelve years earlier when their firms were representing opposing parties in a lawsuit. *Id*.

This Court concluded the arbitrator's failure to disclose that KBR's party representative had previously appeared before him as a party representative of a related entity was "a fact that might, to an objective observer, create a reasonable impression of partiality." *Id*. at 182. Further, this Court concluded the "innocuous comment" at the beginning of the hearing did not result in a waiver of the complaint. *Id*.

In *Karlseng II*, the arbitrator wholly failed to disclose his relationship with the lead attorney for the plaintiff. After the award, the defendants learned of numerous contacts going back several years. *See Karlseng*, 346 S.W.3d at 87–94. The defendants presented substantial evidence of a long-standing personal, social, and professional relationship between the arbitrator and the attorney. *Id*. at 98. Nevertheless, the trial court confirmed the award. *Id*. at 87. This Court reversed the trial court, concluding the facts demonstrated a relationship that "'might, to an objective observer, create a reasonable impression of the arbitrator's partiality'" if not disclosed. *Id*. at 100.

Unlike *Alim* and *Karlseng II*, at the arbitration hearing, Faulkner specifically disclosed that appellees' lawyers had appeared before him in arbitrations and asked if anyone objected. He answered the only question asked of him by Meritage, and the arbitration proceeded. There is nothing in the record to suggest that Faulkner had any long-standing business, social, or personal relationship with the attorneys that he failed to disclose.[2]

As for Faulkner's alleged failure to disclose arbitrations prior to his appointment, Meritage contends Faulkner represented at the initial telephone conference that he had "no conflicts" yet there were "at least three other instances" in which he served as an arbitrator in matters in which Lemon acted as counsel before his appointment. Meritage relies on two pieces of evidence: (1) the affidavit of its attorney, Whitley, regarding the February 2011 telephone conference and (2) the Harwell affidavit asserting Faulkner arbitrated three cases in which Lemon was involved before his appointment to this case.

We begin with Whitley's affidavit regarding the telephone conference. The telephone conference was the parties' first oral communication with the arbitrator and set the agenda for

---

[2] The arbitrator in *Karlseng II* was Robert Faulkner, who is not the same arbitrator as the one in this case, Richard Faulkner.

the proceedings. But the conference was not recorded. Instead, Meritage relied on its counsel to recall, two years later, what was said during that conference. The trial judge, however, told the parties at the new trial hearing that the "lack of a record" was an "important part" in making his decision. Further, the judge explained the arbitrator's statement that he had "one or two more arbitrations" with appellees' attorneys indicated to him that "there was some prior disclosure because he said one or two more." Having reviewed the record, we cannot say the trial judge's interpretation is unreasonable.

A court must have a sufficient record, and complaints must have been preserved for this Court to review them. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 (Tex. 2011). For efficiency's sake, arbitration proceedings are often informal; procedural rules are relaxed, rules of evidence are not followed, and no record is made. *Id*. While these aspects of arbitration are key to reducing costs and delay in resolving disputes, they must "fall casualty" to the requirements for full judicial review. *Id*. The parties decide whether the benefits are worth the additional cost and delay. *Id*. at 101–02.

Regardless, without the Harwell affidavit, there is no evidence in the record to rebut the claim that Faulkner had no conflicts.[3] And Harwell's affidavit was not on file at the time of the trial court's hearing. Rather, Meritage filed the affidavit, without leave of court, some hours after the hearing was over. The trial court issued its ruling the same day, and despite Meritage's assertion otherwise, there is nothing in the record to show the evidence was filed and in front of the trial judge before he signed the order and the final judgment. Although the evidence was before the trial court at the subsequent new trial hearing, Meritage does not complain about the trial court's denial of its motion for new trial. Because Meritage has not shown this evidence

---

[3] To the extent Meritage relies on Jones's statement in his affidavit that he had heard of "at least three other instances" where Faulkner was the arbitrator and Lemon was the lawyer, the record is clear the trial court considered the statement "inadmissible hearsay." Moreover, the statement is vague and provides no information from which the trial court, or this Court, could engage in any meaningful analysis of the evident partiality issue.

was before the trial court before it made its decision to deny the motion to vacate, we do not consider it in our review of the ruling on that matter. *Cf. Maximum Med. Improvement, Inc. v. County of Dallas*, 272 S.W.3d 832, 834 (Tex. App.—Dallas 2008, no pet.) (in reviewing judgment following bench trial, this Court "will only consider the evidence before the trial court when it rendered its judgment"); *In re A.W.P.*, 200 S.W.3d 242, 245 (Tex. App.—Dallas 2006, no pet.) (explaining that in determining whether trial court properly granted judgment on deemed admissions, we consider only evidence before trial court at time it made decision); *Deerfield Land Joint Venture v. S. Union Realty Co.*, 758 S.W.2d 608, 611 (Tex. App.—Dallas 1988, writ denied) (concluding that reviewing court considers only evidence before trial court at time of summary judgment hearing); *Clark v. Noyes*, 871 S.W.2d 508, 519 & n.5 (Tex. App.—Dallas 1994, no writ) (refusing to consider evidence not presented at time of hearing on special appearance).

Having considered the record in this case, we conclude the trial court did not err in rejecting Meritage's claim of evident partiality, denying its motion to vacate on that ground, and confirming the arbitrator's award. We overrule the first issue.

In its second issue, Meritage alternatively argues the trial court should have granted a continuance so that it could conduct discovery on the nondisclosure issue. Meritage did not file a written motion for continuance. Instead, it relies on the following statement, made during the hearing on the motion to confirm/vacate, to preserve its request:

> [MERITAGE'S COUNSEL]: . . . [W]e don't think the prior conflicts are necessary, the ones before the arbitration are necessary given the non-disclosure of the information at the hearing . . . . *But if that is important to Your Honor, then I would move to recess this hearing for an opportunity to send that discovery request to the plaintiffs and get that information that way.*

To present a complaint for appellate review, the record must show a complaint was communicated to the trial court by a timely motion, request, or objection complying with the

requirements of the rules of civil procedure. TEX. R. CIV. P. 33.1(a); *Taherzadeh v. Ghaleh-Assadi*, 108 S.W.3d 927, 928 (Tex. App.—Dallas 2003, pet. denied). When a party moves for a continuance, Texas Rule of Civil Procedure 251 requires the party to show "sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251.

Assuming Meritage's conditional request for a recess constituted a request for continuance, Meritage presented its oral motion without a supporting affidavit. Further, nothing in the record shows the parties consented to a continuance or that they were entitled to one by operation of law. Consequently, we conclude Meritage's complaint is not preserved. *Taherzadeh*, 108 S.W.3d at 928; *Dempsey v. Dempsey*, 227 S.W.3d 771, 776 (Tex. App.—El Paso 2005, no pet.) (op. on motion for reh'g) (concluding oral request for continuance failed to preserve error).

Notwithstanding his failure to preserve error, Meritage's argument fails. We review for clear abuse of discretion the trial court's decision to deny a motion for continuance on a case-by-case basis. *Karlseng v. Cooke*, 286 S.W.2d 51, 56 (Tex. App.—Dallas 2009, no pet.) (*Karlseng I*). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id*. In determining whether the trial court abused its discretion in denying a motion for continuance seeking additional discovery, we consider the following nonexclusive factors: the length of time the case has been on file, the materiality and purpose of the intended discovery, and whether the party seeking discovery has exercised due diligence to obtain the discovery sought. *Id*.

Here, the case had been on file almost three years at the time of the confirmation hearing. More relevant, however, is the fact Meritage had known, at least as early as October 2012, that Faulkner had been the arbitrator in cases in which Lemon and Grisham were also involved. Despite having that information, Meritage did nothing to seek additional information on the

subject until Faulkner announced his decision more than two months later. Then, on the day of the hearing on the motion to confirm/motion to vacate, Meritage asked to recess the hearing, *if* the trial court wanted evidence of prior non-disclosures. Meritage offered no explanation as to why it could not produce the evidence in time for the hearing, and in fact, obtained an affidavit within hours of leaving the hearing. Under these circumstances, we cannot conclude the trial court abused its discretion in failing to grant a continuance. We overrule the second issue.

We affirm the trial court's judgment.

130831F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MERITAGE HOMES OF TEXAS, L.L.C.
D/B/A MONTEREY HOMES, Appellant

No. 05-13-00831-CV        V.

JU-AN RUAN AND MING-WU, ZIN-
ZHAO AND XINRAN WANG, QUISHEN
TANG AND QUN REN, AND WINDON
AND MELODY CHAU, Appellees

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-00490.
Opinion delivered by Justice Francis;
Justices Myers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees JU-AN RUAN AND MING-WU, ZIN-ZHAO AND XINRAN WANG, QUISHEN TANG AND QUN REN, AND WINDON AND MELODY CHAU recover their costs of this appeal and the full amount of the trial court's judgment from appellant MERITAGE HOMES OF TEXAS, L.L.C. D/B/A MONTEREY HOMES and from Hartford Fire Insurance Company as surety on appellant's supersedeas bond.

Judgment entered September 16, 2014