[Civ. No. 11936. Second Appellate District, Division Two.—November 17, 1938.]

RAY PIGNET et al., Appellants, v. CITY OF SANTA MONICA (a Municipal Corporation) et al., Respondents.

MacFarländ & Sisenwein, Max Sisenwein and David Blonder for Appellants.

Gibson, Dunn & Crutcher, Philip C. Sterry and Cornelius W. McInerny, Jr., for Respondents.

CRAIL, P. J.—This is an appeal from a judgment of dismissal after a nonsuit in favor of the City of Santa Monica and E. R. Carter in an action for damages for injuries resulting from the collision of the plaintiff's airplane with the automobile of Weldon Van Gundy. Van Gundy is not an appellant and is hereinafter referred to as Van Gundy. The accident happened on Clover Field, an airport owned and operated by the City of Santa Monica. Carter was the manager of said field.

Clover Field Airport was provided with two runways which were 200 feet wide and which extended to the opposite corners of the field, crossing at the center, so that flights and landings could be made in any direction, depending on the direction of the wind. The plaintiff, for hire, had obtained the right to use said field for flying purposes, and was engaged in giving flying instructions to a student. At the time of the accident the plaintiff was landing his airplane. Van Gundy drove his automobile upon the runway in such a way as to collide with the plaintiff's airplane while he was landing.

Since at the time of the collision there were no statutory rules governing the care which an airport was required to exercise to protect users of its field in an intrastate flight, the standard of care of an airport is to be judged by the general laws and rules of negligence pertinent and applicable to the facts. (*Parker* v. *Granger,* 4 Cal. (2d) 668, at 677 [52 Pac. (2d) 226].)

The City of Santa Monica in conducting the Clover Field Airport was acting in a proprietary capacity, and as such was liable like and only like any other individual for

damages and injuries caused by its negligence toward persons using its airport. (*Coleman* v. *City of Oakland,* 110 Cal. App. 715 [295 Pac. 59].)

Both sides to this appeal agree that it is the duty of an airport owner in the operation of an airport to protect persons from dangers arising from the negligence of a third party which could reasonably have been anticipated.

The defendants contend that Van Gundy's act in driving upon the runway was one which was not reasonable to anticipate under the circumstances. The plaintiffs contend that the evidence established that the defendants should have anticipated that Van Gundy would drive upon the runways and did not exercise the care required of them, because (1) automobiles had been permitted on the runways prior to the accident, and the defendants had been warned against the dangers of permitting such use of the runways prior to the accident; (2) defendants failed to maintain proper fences, signs or barriers to keep automobiles off the runways; (3) they failed to maintain watchmen to prevent automobiles from being driven onto the runways; and (4) Van Gundy was not warned to keep his automobile off the runways.

In passing upon a motion for a nonsuit, every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the plaintiff (9 New California Digest, 304, section 74, subsection [4], and cases therein cited), and it is our duty then to determine if there is any substantial evidence that the act of Van Gundy in driving upon the runway was one which reasonably should have been anticipated by the defendants. If there is such evidence in the record, the judgment should be reversed.

In viewing the evidence we find that on the date of the accident and for some time prior thereto the W. P. A. had been engaged in construction work on the runways at Clover Field. Certain funds, equipment and materials had been furnished by the city, the labor and other funds being furnished by the W. P. A. The laborers engaged on the project, including Van Gundy, were selected by and under the exclusive control of the W. P. A.

We further find that a Mr. Smallwood testified that he saw automobiles on the runways several times before the accident and that he had conversations with Col. Carter, the manager of the airport, about a month before the accident; that he had several of said conversations; that every time he saw an automobile on the runway he would make a complaint to Col. Carter, and he pointed out the fact that there was an automobile on the runway and that he should do something about it. He made these complaints to Col. Carter because he knew it was dangerous to have automobiles on the runways. A witness, named Spencer, saw automobiles on the runway prior to the accident and talked about it to the W. P. A. foreman: "A. Well, as I said I objected to their making that a highway and that I didn't like to see cars running on the runway because it was hazardous to the field." He had more than one conversation to this same effect. The W. P. A. foreman's reply was that he would tell them to keep off. The defendants relied in part upon the care given by the W. P. A. foreman and his men.

It is not necessary to set the evidence out in the form of quotations, but there is evidence in the record that the defendants did not maintain fences, barricades, markers or watchmen to prevent automobiles from being driven onto the airport field and onto the runways used by airplanes; that Van Gundy had operated his automobile upon the airport field on several occasions prior to the accident, and that at no time was he told or warned to keep his automobile off the field; also that on the day of the accident there were automobiles being driven on the runways by persons other than Van Gundy. Van Gundy testified that there were no obstructions of any kind to prevent his driving onto the runway, and that he never saw any watchmen there.

In our view there was substantial evidence from which the jury might have found that the defendants had knowledge and notice of the dangerous condition which existed on the airport field by virtue of the fact that automobiles were being driven on the concrete runways used for the landing and taking off of airplanes; also that they maintained no proper fences about the airport and allowed a portion of the fence which it had established to remain down so that Van Gundy's automobile could enter the field at the northeast

corner of the airport; that they maintained no watchmen, barrier or other preventive device to prevent Van Gundy or any other person from driving on the runway from the northeast portion of the field, where the construction work was going on, to the southwest portion of the field, and that under all the facts and circumstances in evidence the defendants should have anticipated that Van Gundy would drive upon the runway. Therefore it was reversible error for the trial court to decide as a matter of law that no negligence existed on the part of defendants. The question should have been left to the jury for determination.

Judgment reversed.

Wood, J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 8, 1938.