AVIATION SERVICES, INC., AND THE TOWN OF MORRIS-TOWN, PLAINTIFFS-RESPONDENTS, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF HANOVER, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued November 21 and 28, 1955—Decided January 9, 1956.

276

*Mr. David Young, 3rd,* argued the cause for the defendants-appellants (*Messrs. Young and Sears,* attorneys).

*Mr. Edward LeC. Vogt* argued the cause for the plaintiff-respondent Aviation Services, Inc. (*Messrs. Schenck, Price, Smith & King,* attorneys).

*Mr. E. Marco Stirone,* attorney for plaintiff-respondent Town of Morristown.

The opinion of the court was delivered by

BURLING, J. During the period of 1931 to 1941 the Town of Morristown (hereinafter referred to as Morristown) acquired a 235-acre tract of land within the boundary of the Township of Hanover (hereinafter referred to as Hanover). Pursuant to agreements between the United States of America and Morristown the property was developed for airport purposes and to this end runways, hangars and other buildings were constructed. The airport development was initiated in 1941 and the use has continued to the present day, Morristown having assumed control of the operation after World War II.

In 1946 Hanover Township enacted a zoning ordinance which incorporated the airport lands into a Residence B zone. Airports were impliedly excluded from residential zones from the terms of this ordinance and the preexisting aviation field became a non-conforming use. Subsequent amendments to the zoning plan have worked no change in this status.

Morristown, in the operation of the airport, has made leases of the facilities to private persons and corporations. Plaintiff Aviation Services, Inc., is a lessee under one of these agreements. It operates an aircraft maintenance service and a flight school, conducting its business from a building at the airport. In May of 1953 Aviation Services, Inc., applied to the building inspector of Hanover Township for a permit to enable it to reconstruct and enlarge the building it had leased, an improvement which Morristown had previously authorized. The application was denied and an appeal

was taken to the Board of Adjustment of Hanover Township without success.

Thereafter Aviation Services, Inc., filed a complaint in lieu of prerogative writ against the building inspector and Board of Adjustment of Hanover Township. Morristown intervened as a party plaintiff and filed a separate complaint, alleging, *inter alia*, that the provisions of the ordinance as applied to the property in question "are invalid and void" either because the lands are owned by "a municipal corporation" or by virtue of the unsuitability of the lands for residential purposes the ordinance imposes "restrictions and prohibitions which are arbitrary, unreasonable and capricious." The challenge thus made caused Hanover Township to intervene as a party defendant. Morristown then moved for summary judgment upon two counts of its complaint which raised this single issue:

Is the Morristown Municipal Airport subject to the zoning ordinance of Hanover Township?

A comparable motion was made by Aviation Services, Inc., upon its complaint.

The trial court answered this question in the negative, reasoning by analogy from the determination in *Town of Bloomfield v. New Jersey Highway Authority*, 18 *N. J.* 237 (1955), where we held that in the absence of legislative provision to the contrary the Highway Authority, in carrying out the purpose for which it was created, was not subject to the municipal zoning ordinance of Bloomfield.

Defendants filed an appeal to the Superior Court, Appellate Division, and because of the general public importance of the question we certified the cause prior to a review below. *R. R.* 1:10–1(*a*).

In 1929 the Legislature authorized municipal governing bodies to "acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate" airports *within* the municipal limits, *R. S.* 40:8–2 (*L.* 1929, *c.* 325). This enactment was amended by *L.* 1947, *c.* 85 to permit operation of airports "within or without" the municipal boundaries. The original legislation enabled municipalities

to acquire property by condemnation if necessary, *R. S.* 40:8–4 and 5, characterizing property acquisition for airport facilities as "a public purpose" and "a matter of public necessity."

Relying upon this statutory background Morristown argues that the airport operation constitutes an essential governmental function serving the public need and by virtue of its nature is immune to the zoning power of Hanover Township. The latter party contends the use to be proprietary, "a business pure and simple," entitled to no greater sanctity than a private corporation. The issue thus joined represents a conflict between the interests of a municipality in establishing and maintaining an airport outside its jurisdiction and the integrity of the zoning scheme embracing the territory sought to be utilized.

It is unnecessary to dwell upon the public attributes of a municipal airport operation. The purposes thus served have long been recognized as responsive to the common weal. *Dysart v. City of St. Louis,* 321 *Mo.* 514, 11 *S. W. 2d* 1045, 62 *A. L. R.* 762 (*Sup. Ct.* 1928); *Brooks v. Patterson,* 159 *Fla.* 263, 31 *So. 2d* 472 (*Sup. Ct.* 1947); *Wentz v. City of Philadelphia,* 301 *Pa.* 261, 151 *A.* 883 (*Sup. Ct.* 1930). Over 27 years ago, Mr. Justice Cardozo stated with prophetic wisdom:

"We think the purpose to be served is both public and municipal. A city acts for city purposes when it builds a dock or a bridge or a street or a subway. *Sun Printing & Publishing Ass'n v. City of New York,* 152 *N. Y.* 257, 46 *N. E.* 499, 37 *L. R. A.* 788. Its purpose is not different when it builds an airport. *Wichita v. Clapp,* 125 *Kan.* 100, 263 *P.* 12. Aviation is to-day an established method of transportation. The future, even the near future will make it still more general. The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition." *Hesse v. Rath,* 249 *N. Y.* 436, 164 *N. E.* 342 (*Ct. App.* 1928).

An overwhelming number of courts have stated municipal airport projects to be "governmental" where questions of public financing are presented, *Dysart v. City of St. Louis,*

supra; *State ex rel. Hile v. City of Cleveland*, 26 *Ohio App.* 265, 160 *N. E.* 241 (*Ct. App.* 1927) ; *McClintock v. City of Roseburg*, 127 *Ore.* 698, 273 *P.* 331 (*Sup. Ct.* 1929) ; *Wentz v. City of Philadelphia*, 301 *Pa.* 261, 151 *A.* 883 (*Sup. Ct.* 1930) ; *Krenwinkle v. City of Los Angeles*, 4 *Cal.* 2d 611, 51 *P.* 2d 1098 (*Sup. Ct.* 1935) ; *Goswick v. City of Durham*, 211 *N. C.* 687, 191 *S. E.* 728 (*Sup. Ct.* 1937), and as serving a "public use" where property acquisition by condemnation is in issue, *City of Wichita v. Clapp*, 125 *Kan.* 100, 263 *P.* 12, 63 *A. L. R.* 478 (*Sup. Ct.* 1928), *State ex rel. Chandler v. Jackson*, 121 *Ohio St.* 186, 167 *N. E.* 396 (*Sup. Ct.* 1929) ; *City of Spokane v. Williams*, 157 *Wash.* 120, 288 *P.* 258 (*Sup. Ct.* 1930) ; *Burnham v. Mayor and Aldermen of Beverly*, 309 *Mass.* 388, 35 *N. E.* 2d 242, 135 *A. L. R.* 750 (*Sup. Jud. Ct.* 1941). In some jurisdictions the attitude is reversed in matters of municipal tort liability and the airport function is subjected to a "proprietary" appellation, *Mollencop v. City of Salem*, 139 *Ore.* 137, 8 *P.* 2d 783, 83 *A. L. R.* 315 (*Sup. Ct.* 1932) ; *Pignet v. City of Santa Monica*, 29 *Cal. App.* 2d 286, 84 *P.* 2d 166 (*Cal. App.* 1938) ; *Peavey v. City of Miami*, 146 *Fla.* 629, 1 *So.* 2d 614 (*Sup. Ct.* 1941) ; *Rhodes v. City of Asheville*, 230 *N. C.* 134, 52 *S. E.* 2d 371 (*Sup. Ct.* 1949) rehearing denied 230 *N. C.* 759, 53 *S. E.* 2d 313 ; *Behnke v. City of Moberly*, 243 *S. W.* 2d 549 (*Mo. App.* 1951).

██ This court has recognized that whether a proposed project constitutes a proper municipal undertaking in the light of the benefits thereby accruing to the public generally will often depend upon the "social needs of the times," *City of Trenton v. Lenzner*, 16 *N. J.* 465, 470 (1954), and in this regard it is important to recognize that the *Constitution of 1947, Art.* IV, *Sec.* VI, *par.* 3, relating to acquisition of private property by political subdivisions and agencies of the State, specifically mentions airports together with highways and parkways. But we think it unnecessary to a determination of the issue in this case to denominate a municipal airport undertaking a "governmental" as opposed to a "proprietary" function. Enlightenment must come from the

legislative design in vesting municipalities with the authority to establish and maintain airport facilities.

■■ *Town of Bloomfield v. New Jersey Highway Authority, supra,* involved the immunity of a superior authority from a local zoning ordinance. This factor was also present in *Hill v. Borough of Collingswood,* 9 *N. J.* 369 (1952), where we held the Camden County Park Commission created pursuant to *R. S.* 40:37–195 *et seq.,* not to be amenable to the zoning power of the Borough of Collingswood although the park lands were within the municipal boundaries. One general principle reflected by these two cases which bears upon the problem *sub judice* is this: where the immunity from local zoning regulation is claimed by any agency or authority which occupies a superior position in the governmental hierarchy, the presumption is that such immunity was intended in the absence of express statutory language to the contrary. See, *e. g., Tim v. City of Long Branch,* 135 *N. J. L.* 549 (*E. & A.* 1947). There is no basis for the presumption where, as here, the element of superior governmental status is not present, and unless the legislative provisions upon which Morristown relies bestow the municipal immunity argued for the contention must fail.

The issue presented in this case has caused us to investigate other statutory enactments whereby municipalities are delegated powers of condemnation which may be exercised beyond the corporate limits in aid of their public functions. Various provisions of the Home Rule Act, *L.* 1917, *c.* 152, are enlightening in this respect. *R. S.* 40:62–7 authorizes a municipality to acquire by condemnation all necessary lands for the purpose of maintaining an abattoir, but it may not be established within any other municipality except by the consent of the latter's governing body and board of health; *R. S.* 40:62–12, as am. *L.* 1953, *c.* 37, enables a municipality to operate a power plant "within or without the corporate limits." Acquisition by condemnation is authorized. It may erect the necessary conduits in another municipality upon consent. If consent is withheld the aggrieved municipality may invoke the jurisdiction of the Superior Court

which may "direct the terms" upon which the conduits are to be laid. And see *R. S.* 40:62–65, as am. *L.* 1953, *c.* 37, which outlines a similar procedure for laying water pipes and mains upon property beyond the corporate limits.

There is no language in the airport legislation, *R. S.* 40:8–1 *et seq.*, directing preliminary inter-municipal negotiation and consent. *R. S.* 40:8–2, as am. *L.* 1947, *c.* 85, speaks in broad terms:

"The governing body of any municipality may acquire, establish, construct, own, control, lease, equip, improve, maintain, operate and regulate airports or landing fields for the use of airplanes and other aircraft within or without the limits of such municipality and may use for such purpose or purposes any property, owned or controlled by such municipality, suitable therefor."

██ *R. S.* 40:8–4 and 5 authorize acquisition of property by condemnation to fulfill the broad purposes designated in the section above quoted. We cannot ascribe a vain and impotent meaning to the statute. If the purposes sought to be achieved are to be thwarted by zoning plans which arbitrarily exclude airport uses from an entire municipal domain the progress envisioned by the Legislature and stimulated by this statute may go unrecognized. Rules of statutory construction command a contrary result. *Asbury Park Press v. City of Asbury Park*, 19 *N. J.* 183 (1955); *State v. McCall*, 14 *N. J.* 538 (1954).

 The absence of any language which would limit a municipal airport undertaking, either within or without its boundaries, and the bestowal of the power of eminent domain to subserve the program all reflect legislative intent to immunize the acquisition and maintenance from the zoning power. We hold that Hanover Township's zoning ordinance is inapplicable to the Morristown Municipal Airport.

Counsel for Hanover Township recognize two decisions, one from Michigan and the other from Ohio, holding municipal zoning laws inapplicable to an airport operation sought to be established by another political subdivision of the state, *Petition of City of Detroit*, 308 *Mich.* 480, 14 *N. W. 2d* 140 (*Sup. Ct.* 1944) and *State ex rel. Helsel v. Board of County*

*Commissioners,* 79 *N. E.* 2d 698, 705 (*Ohio C. P.* 1947), affirmed 78 *N. E.* 2d 694 (*Ohio Ct. App.* 1948), appeal dismissed 79 *N. E.* 2d 911 (*Sup. Ct.* 1948). The latter case concerned a county airport project and acquisition of property within municipalities which had zoned the proposed location against airport uses. Although the decision on this issue appears to have turned upon the grant of the power of eminent domain, the Ohio court significantly stated:

"Zoning ordinances are upheld on the theory that they bear a real and substantial relation to the public welfare. Their validity rests upon the principle that the exercise of rights incident to the ownership of private property may be restricted in the interest of the general welfare of the inhabitants of the municipality. Through the medium of zoning ordinances municipalities may insist that private rights in real property yield to the general good of the community, but the presumption is that the use of public property for public purposes is designed to promote the general welfare also, and no case or textual authority has been cited, that supports the view that municipalities by zoning ordinances, may restrict or limit the use of *public property* for *public purposes.*" 79 *N. E.* 2d, at page 705.

And see *City and County of Denver v. Board of Commissioners of Arapahoe County,* 113 *Colo.* 150, 156 *P.* 2d 101 (*Sup. Ct.* 1945), where Denver sought to establish an airport within another county of the state. The Colorado Supreme Court upheld the authority of Denver to do so in a positive fashion.

Hanover Township argues that the States of Michigan and Ohio do not have statutory enactments similar to *R. S.* 40:55–50 which provides that public utilities are to be exempt from zoning regulations only where the "board of public utility commissioners" shall decide that the "present or proposed situation" of the utility is reasonably necessary for the "service, convenience or welfare of the public." This, taken in conjunction with *R. S.* 40:8–2.1 which permits a municipality to operate an airport *as* a "public utility," is said to require prior resort to the "board of public utility commissioners," and additionally demonstrates the strength of the municipal zoning power against intrusions from other

political subdivisions of the State. We do not consider a municipal airport operation to fall within the statutory language of *R. S.* 48:2–13 which defines a "public utility." It would indeed be unreasonable to ascribe to the Legislature the intent to treat a municipal airport being operated as a public utility (*R. S.* 40:8–2.1) in a distinct fashion from one not so operated so far as the zoning laws are concerned, especially when both are operated for general public use and enjoyment. The provisions of *R. S.* 40:8–2.1 are not *in pari materia* with *R. S.* 40:55–50.

The subject of zoning power and airport uses has seldom been before our courts. In *Yoemans v. Hillsborough Township*, 135 *N. J. L.* 599 (*Sup. Ct.* 1947), the Supreme Court upheld a zoning ordinance which prohibited airports within a municipal residential zone, and the decision was followed in *Ridgewood Air Club v. Board of Adjustment of Village of Ridgewood*, 136 *N. J. L.* 222 (*Sup. Ct.* 1947). In both cases the operation was proposed by private rather than public interests. The Municipal Planning Act, *L.* 1953, *c.* 433, *N. J. S. A.* 40:55–1.1 *et seq.*, contemplates that municipalities acting pursuant to its terms may accommodate airports within the master plan, *N. J. S. A.* 40:55–1.11. Cooperative negotiation between a municipality operating under this statute and federal, state, county, or municipal agencies desirous of locating public projects within the local jurisdiction is anticipated, *N. J. S. A.* 40:55–1.13, but to an extent which need not be determined here for the record makes no mention of Hanover Township's status in this regard.

 Our holding in this case is not to be considered as giving judicial recognition or impetus to a program of wholesale aggrandizement of territory. The authority bestowed upon municipalities to establish and maintain public airport facilities must be reasonably exercised in response to the public need, both present and that fairly to be anticipated. While this court would not condone arbitrary action in the establishment or operation of airport facilities within the domain of another governing power, it is incumbent upon us to lend a liberal construction to the airport legislation,

*R. S.* 40 :8–1 *et seq.,* to insure the benefits which were intended to flow to municipalities having the foresight to maintain these facilities. *Art.* IV, *Sec.* VII, *par.* 11, *Constitution of 1947.* Yet the position urged by Hanover Township, in end result, would require municipalities to either build within their borders or subject the operation to divided control or regulation, if not prohibit it altogether. *Cf. Hill v. Borough of Collingswood, supra.*

Air transportation is no longer in a stage of adolescence. It serves all segments of our economy and society in general. The State Constitution has recognized the importance of providing facilities to accommodate the public interest in air travel. 1947 *Constitution, Art.* IV, *Sec.* VI, *par.* 3. The legislative response may not be viewed in a different light.

The judgment below will be affirmed. No costs will be taxed to any party.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.