STATE of Missouri at the relation of Mrs. Marion E. ASKEW, Mrs. F. E. Badger and Henry N. Ess, and Norman C. Stephenson, Plaintiffs-Appellants,

v.

John J. KOPP, Hunter Phillips and Floyd L. Snyder, Sr., as members of and constituting the Board of Zoning Adjustment of Jackson County, Missouri, Defendants-Respondents,

and

City of Raytown, a fourth class city, Intervenor-Respondent,

William L. Sublette and Cora A. Sublette, Intervenor-Appellants.

No. 47463.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1960.

Henry N. Ess, Robert I. Donnellan, John R. Moberly, Kansas City, for appellants, Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

James E. Campbell, Donald B. Clark, Keith Martin, Kansas City, J. Holmes Greene, Raytown, for City of Raytown.

William J. Gilwee, Kansas City, for Board of Zoning Adjustment.

William K. Poindexter, Kansas City, for appellant-intervenors.

HOUSER, Commissioner.

This is an appeal from a judgment of the Circuit Court of Jackson County in a proceeding in certiorari to review the action and decision of the board of adjustment of that county approving the application of the City of Raytown for authorization to use certain land in the unincorporated area of the county for a sewage disposal plant. Appellants Askew, et al. are protesting adjoining landowners. Appellants Sublette, protesting landowners whose lands lie upstream from the proposed sewer lagoon site, were permitted to intervene by order of the circuit court. Respondents are the City of Raytown and the members of the board of adjustment.

The City of Raytown is a city of the fourth class located in Jackson County. Its board of aldermen decided to build a sewage treatment plant consisting of two large sewage lagoons or oxidation basins, some 2½ miles from the city limits, on three tracts totalling approximately 300 acres located one-half mile east of Noland Road, southeast of Conway Road, in a district (D) zoned as an agricultural district under the Zoning Order of Jackson County. The city entered into option contracts to buy the land needed. On March 13, 1958 the City of Raytown filed with the board of adjustment an application for authorization to use approximately 173 acres of land for a sewage disposal plant. An amended application, which embraced the larger 300-acre tract, was filed with the board of adjustment on March 25, 1958. On April 3, 1958 the Jackson County Planning Commission conducted a public hearing and recommended to the board of adjustment that the authorization be granted. On April 9, 1958 the board of adjustment conducted a public hearing which resulted in the entry of an order granting the authorization requested. Acting under V.A. M.S. § 64.120, subd. 3, Mrs. Marion E. Askew, et al. filed this petition for a writ of certiorari to review the data and records acted upon. The circuit court appointed a referee to take additional evidence. On final hearing the circuit court affirmed the order of the board of adjustment. This appeal followed.

The Zoning Order of Jackson County as amended by Amendment No. 42, adopted on October 17, 1955, distributed sewage disposal plants in Districts A to H, inclusive, including District D, "When authorized by order of the Board of Zoning Adjustment, after public hearing, provided that in their judgment such use will not seriously injure the appropriate use of neighboring property, and will conform to the general intent and purpose of this Order, and further subject to such regulations and conditions as may be imposed by said Board," and the following requirements:

"(1) A plan showing the area in which the sewer system is to be constructed, the size of the laterals, the size and location of the disposal plant, type of disposal plant and the natural water shed of the area shall be filed with the County Planning Commission.

"(2) Such plan shall be approved by the Missouri State Board of Health and the County Sewer Engineer prior to the filing of same with the County Planning Commission.

"(3) Such plan shall be examined by the County Planning Commission and the approval or disapproval of such plan shall be made by the County Planning Commission to the Board of Zoning Adjustment for final approval or disapproval."

*The city's evidence:* At the time of the hearing Raytown was a city of 14,000–15,000 population. A population increase to 18,000 was expected by the time the sewage lagoons were to be completed. Sufficient land was to be acquired to take care of the sewage needs of a population of 42,000. Raytown, the largest city in the state without sewers, had one conventional, mechanical-type sewage disposal plant serving a part of the city but no city-wide, modern sewage system. Most of the city was served by septic tanks. There was a dangerous, unsanitary condition existing in various parts of the city. Eighty per cent of the city sewage was out on top of the ground. The city was confronted with potential epidemics. The city's consulting engineer testified that the area selected by the city for the sewage lagoon was the only site at which the needed area of low-lying ground could be found. Two sewage lagoons, surrounded by embankments or dikes ranging in height from 4 to 13 feet, were proposed for the present. The city's engineer testified that the sewage lagoons as designed should not produce odors. The

nearest residence is 1,040 feet from the proposed lagoons. The nearest lagoon would be located approximately 300 feet from the farm of appellant Henry N. Ess. With the highest water the lagoon dam will be three feet above the water level. Raw sewage would never spill out of the lagoon. There is no way, based on the elevations, that the lagoon could cause more flood on plaintiffs' farms than had occurred in the past. The embankments or dikes would not constitute a "plug" or a flood hazard by backing up the overflow waters of the Little Blue River. The plans had been approved by the State Board of Health and the County Sewer Department. The engineering on the lagoon conformed to the standards of the United States Public Health Service. The city's engineer testified as to the manner in which the lagoons were expected to treat the sewage so as to render it harmless when the effluent is dumped into the Little Blue River. He conceded that he had taken no sewage tests to determine the questions of seepage and pollution of underground water tables or whether the embankments or dikes around the lagoons would stand up under the periodic onrush of flood waters in the valley.

Appellants Askew, et al. offered testimony to show the following: Sewage lagoons are incapable of neutralizing detergents and ground food wastes. They tend merely to collect instead of treat and dispose of domestic sewage because of overloading. To perform properly there must be a low load factor. The water in the lagoons must be kept at a proper level and there must be a constant, plentiful supply of sunlight and oxygen. In their operation they tend to leave smelly deposits on the embankments and in the vegetation. Flies and mosquitos breed in these places and after a period of cloudy, cold weather or after the water in the lagoons has been frozen over in the winter offensive odors arise, odors which are noticeable to residents and damaging to property even at a considerable distance depending upon the direction in which the wind is blowing. Appellants' engineer testified that a soil sample from the site of the proposed sewage lagoons disclosed an alluvial type soil composed of decayed organic matter not impervious to seepage or water erosion; that it would not offer much resistance to overflow waters; and that the proposed lagoons would constitute a plug or obstruction to the free flow of heavy rainfall and a substantial flood hazard in the Little Blue valley. There was evidence that the value of nearby lands would be depreciated. The F.H.A. places restrictions on housing loans in the near vicinity of such lagoons. Appellants' real estate expert testified that the Henry N. Ess farm on the east bank of the Little Blue River immediately across from the sewage lagoons would be damaged from $19,000 to $22,000 and that the land would be rendered unsuitable for sub-division into large lots for attractive suburban housing, the use and purpose for which it was best adapted, by reason of its location within three miles of the city limits of Independence in an area served by several main highways, its topography and wooded character, and the fact that it is now served by water, gas and electrical power lines.

After the writ of certiorari had been issued and the board of zoning adjustment had certified the record below to the circuit court for review a flash flood or cloudburst occurred in the Little Blue valley. High flood waters covered some of the main roads, rendered them impassable, surrounded and entered homes and buildings in the near vicinity of the lagoon site and flooded part of the proposed site and some of the low acreage of the appellants. On application the court appointed a referee to take additional evidence on the question of damage and depreciation of the value of the adjacent property and on the question of the flood hazard. Testimony and exhibits were produced relating to the flooding of the proposed lagoon site and nearby areas in 1927–28, 1951 and in 1958. Appellants' engineer testified that following the high water in 1958 they had found flood debris

high up in the limbs of the trees on both banks of the Little Blue River, higher than the lagoon site on the westerly bank. Photographs were introduced in evidence showing the level reached by the muddy water on cornstalks growing on the high northerly bank of the river which was higher than the lagoon site. The engineer testified that the dikes and embankments of the lagoons would constitute an obstacle which would constrict the flood plain of the river and would periodically tend to back up water so as to cause floods in the valley. Considerable evidence was introduced relating to inundation of the proposed plant site and surrounding territory in previous floods which occurred in 1927 and 1951.

The city produced an engineer who testified that the proposed lagoon installation would not increase the flood hazards, even if a flood twice as severe as the 1951 flood should occur. The city's engineer offered in evidence a revised plan for the locations of the lagoons whereby they were to be set back two or three hundred feet from the westerly bank of the river, thus allowing a wider channel than shown on an earlier map, and testified that even if the stream should flood in the lagoon site the lagoons and dikes would not raise the stream level more than a fraction of a foot at the mouth of Wilson Creek, a tributary. Evidence was presented showing that the lagoon would increase the value of the land surrounding the lagoon because of the availability of sewage facilities.

On this appeal appellants Askew, et al. make these points: The board of adjustment lacked jurisdiction to make the order because the zoning Enabling Act, § 64.100 et seq., contains no authority to grant "special use permits or authorizations for privileged use of certain lands in a zoned district." Amendment No. 42 is null and void because it does not provide uniform use regulations, guides or definite standards applicable to all properties alike, in violation of §§ 2 and 10, art. I, Constitution of Missouri, V.A.M.S. It is invalid as an attempt to provide for "spot zoning" and

an unlawful delegation of the county court's legislative and administrative powers, and of the state's police power, in violation of § 7, art. VI, Constitution of Missouri. The board's order constitutes local, special or class legislation in violation of Clauses (28) and (30), § 40, art. III, Constitution of Missouri. No proper notice of the hearing before the board of adjustment was given. Appellants Askew, et al. were denied equal protection of law and due process of law, in violation of § 2, art. I of the Constitution of Missouri and § 1 of the 14th Amendment to the Constitution of the United States. The special permit granted to the city takes the private property of these appellants for a public use without paying just compensation therefor in violation of § 26, art. I of the Constitution of Missouri. The order of the board is not supported by competent and substantial evidence upon the entire record. The competent and substantial evidence on the entire record "overwhelmingly establishes, beyond any question, that appellants' projects should have been upheld and respondent city's application for a special use permit should have been denied." Appellants Sublette raise the point that there was a failure to give the required notice to adjoining property owners and to meet other procedural requirements, thereby violating the requirements of due process of law and rendering the "special use permit" void; that the board of adjustment had no jurisdiction to grant such "special permit."

■ Questions involving a construction of the federal and state constitutions were raised by appellants Askew, et al. at the earliest opportunity, before the county planning commission, and were kept alive at every stage of the proceedings before the board of adjustment, in the circuit court, and in this court. We have appellate jurisdiction. State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934.

Preliminary to a consideration of the points raised by appellants we are confronted with respondents' contention that

the City of Raytown is not subject to the zoning regulations of Jackson County; that the city is immune from local zoning regulations because the city was engaging in a governmental function in providing for a sewage disposal plant; that the city has power to purchase or condemn lands within five miles of the city for sewer carriage and outfall and that the city's power of eminent domain, complete in itself, is not limited by the county's zoning power.

■ Appellants complain of the "strange and inconsistent" position taken by the City of Raytown in filing and pressing its application for authority under the zoning order to install and operate its sewage disposal plant and now, on appeal, "belatedly taking the position that it can do as it pleases, without regard for the 1st Class County Zoning Law." The city's contention, however, raises a question of the jurisdiction of the board of adjustment over the subject matter, which can be raised at any stage of the proceeding and for the first time on appeal. Peerless Fixture Co. v. Keitel, 355 Mo. 144, 195 S.W.2d 449.

■ The preliminary question—whether a local regulation made under the police power granted the county court in the field of zoning applies to the activities of a city outside its corporate limits under the police power granted the board of aldermen to secure the general health of the city—will be answered by ascertaining the legislative intent and design in granting to cities the power to acquire sewage disposal plants, Aviation Services v. Board of Adjustment, 20 N.J. 275, 119 A.2d 761, loc. cit. 765, and is not to be resolved simply by applying the "governmental vs. proprietary" test.

1. All section references are to RSMo 1949, V.A.M.S., unless otherwise indicated.

2. Art. VI, § 18(c), Constitution of Missouri, 1945, relating to special charters for certain counties, authorizes the inclusion in such charters of provisions

The constitutional and statutory sources of the powers exercised by the two governmental units are as follows:

Article IV, § 37 of the Constitution of Missouri provides: "The health and general welfare of the people are matters of primary public concern; and to secure them the general assembly shall establish a department of public health and welfare, and may grant power with respect thereto to counties, cities or other political subdivisions of the state."

Section 79.380 [1] provides that the board of aldermen of cities of the fourth class "may purchase or condemn and hold for the city, within or without the city limits, within five miles therefrom all necessary lands for * * * sewer carriage and outfall, * * * and make regulations to secure the general health of the city, * * *."

Section 71.680 authorizes cities of the fourth class, among others, "for the protection and preservation of the public health," to acquire purification plants or sewage disposal plants, within or without the corporate limits of such cities, for the purification of all sewage accumulating in such cities, by purchase, construction, lease, gift or otherwise.

No applicable provision of the Constitution relating to zoning is to be found.[2]

Section 64.090, subd. 1, provides that "For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties, to conserve and protect property and building values, to secure the most economical use of the land and to facilitate the adequate provision of public improvements all in accordance with a comprehensive plan, the county court in all counties of the first class, as provided by

"for the vesting and exercise of legislative power pertaining to public health, * * * planning and zoning, in the part of the county outside incorporated cities; * * *" but Jackson County does not operate under a special charter.

law, is hereby empowered to regulate and restrict, by order, in the unincorporated portions of the county, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes, including areas for agriculture, forestry and recreation."

■ A review of these provisions in the light of the decided cases leads to the conclusion that the City of Raytown is not subject to the Zoning Order of Jackson County. Local zoning ordinances are not applicable to public uses of property for which an agency of the government has the power to acquire lands by the exercise of the power of eminent domain. In State ex rel. St. Louis Union Trust Co. v. Ferriss, Mo.Sup., 304 S.W.2d 896, 900, the question was whether a city zoning ordinance could prohibit a land use sought to be appropriated by a school district. This Court held that the municipal zoning power granted by § 89.020 (which is couched in essentially the same language as that set forth in the quotation from § 64.090, supra) must be subordinated to the general power granted school districts to locate sites for school houses and to secure title thereto by agreement or condemnation; that under the rule of ejusdem generis the authority to regulate and restrict the location and use of buildings and lands for "trade, industry, residence or other purposes" relates to *private* property and the phrase "other purposes" is not to be broadened to include a public use of property by the state in carrying out its constitutional mandate to establish and maintain free public schools; that the power of eminent domain is superior to property rights, the right to exercise the power being exclusively a legislative prerogative, "subject only to such limitations as are fixed by the constitution itself." 304 S.W.2d loc. cit. 898. The same construction was given the words "or oth-

er purposes" in Congregation Temple Israel v. City of Creve Coeur, Mo.Sup., 320 S.W.2d 451, 454, in which this court held that the power given a municipality under § 89.020 to regulate and restrict "the location and use of buildings, structures and land for trade, industry, residence or other purposes" should not be broadened to include the right to restrict or regulate the location or use of property for religious purposes by religious organizations whose rights to the free exercise of religion are protected by constitutional guaranties. Giving the identical language of § 64.090 the same construction we rule that the power therein given the county court to regulate and restrict the location and use of buildings, structures, and land for trade, industry, residence or other purposes does not include authority to regulate and restrict the government or its political subdivisions in the use of buildings, structures and land for public purposes, exercised under a constitutional mandate making the health of the people a matter of primary public concern and vesting in the general assembly authorization to grant power with respect thereto to cities (a power exercised by the passage of §§ 79.380 and 71.680); and that the words "trade, industry, residence or other purposes" contained in § 64.090, which are words of general inclusion, relate to private property uses and should not be construed to include the state or its political subdivisions, in such a manner as to encroach upon its sovereign power of eminent domain. The state and its agencies are not within the purview of a statute unless an intention to include them is clearly manifest, especially where prerogatives, rights, titles or interests of the state would be divested or diminished. Hayes v. City of Kansas City, 362 Mo. 368, 241 S.W.2d 888. The power granted to the county court under the zoning enabling act with respect to the unincorporated areas of the county must yield to the power granted cities of the fourth class to purchase or condemn all necessary lands within five miles of such city for sewer

carriage and outfall and for the construction of sewage disposal plants. The right to condemn is superior to property rights, and is limited only by the constitution. McQuillin on Municipal Corporations, 3rd Ed., Rev., Vol. 8, § 25.15 says: "Zoning restrictions cannot apply to the state or any of its agencies vested with the right of eminent domain in the use of land for public purposes." The granting to the city of the right to condemn for sewer carriage and outfall, § 79.380, and to acquire sewage disposal plants, § 71.680, either within or without the corporate limits and within five miles thereof, in unconditional language, without any requirement in either section that the city respect or comply with local zoning regulations, together with the fact that the zoning law, § 64.090, does not empower the county court to regulate, or restrict the location of city-owned sewage disposal plants in the unincorporated areas of the county, see Decatur Park Dist. v. Becker, 368 Ill. 442, 14 N.E.2d 490, loc. cit. 493, indicate a legislative intent that the city's right to locate, acquire and establish a sewage disposal plant not be subject to the zoning orders of the county court. Aviation Services v. Board of Adjustment, 1956, 20 N.J. 275, 119 A. 2d 761, loc. cit. 766. This question is considered in Anno. Applicability of zoning regulations to governmental projects or activities, 61 A.L.R.2d 970, loc. cits. 978, 979.

■ The rule that the grant of the power of eminent domain to a public body desiring to utilize land for a purpose prohibited by a local zoning ordinance renders the zoning ordinance inapplicable has been applied frequently in other jurisdictions. Thus it has been held that a city could erect a fire station in an area of the city zoned for residences, apartments and churches, Mayor of Savannah v. Collins, 1954, 211 Ga. 191, 84 S.E.2d 454; a housing authority could condemn for a multiple-residence housing project in an area zoned for single-family residential use (notwithstanding the statute expressly made the housing authority amenable to local zoning laws), West v. Housing Authority of Atlanta, 1954, 211 Ga. 133, 84 S.E.2d 30; a county could build an airport in an area of a village in spite of a village zoning ordinance prohibiting the use of the property for an airport, State ex rel. Helsel v. Board of County Commissioners, 1948, 149 Ohio St. 583, 79 N.E.2d 911; a turnpike commission could establish a turnpike through territory zoned against turnpike use, State ex rel. Ohio Turnpike Commission v. Allen, 1952, 158 Ohio St. 168, 107 N.E.2d 345, certiorari denied Balduff v. Turnpike Commission, 344 U.S. 865, 73 S. Ct. 107, 97 L.Ed. 671; and cities could establish airports without regard to township zoning regulations prohibiting the same. Aviation Services v. Board of Adjustment, 1956, 20 N.J. 275, 119 A.2d 761; In re Petition of City of Detroit, 1944, 308 Mich. 480, 14 N.W.2d 140.

The fact that the city's rights in the lands in question were not actually acquired by the exercise of the right of eminent domain, but by private negotiation and agreement with the owners, does not militate against our holding. The important consideration is that the city had the *right to condemn* private property for the use in question and not whether the city in the particular case actually resorted to condemnation. Mayor of Savannah v. Collins, supra.

■ Appellants strongly urge that in constructing and operating a sewage disposal plant the city will be using this public property for a proprietary and not a governmental function and that the property therefore is subject to zoning laws. In support of this contention appellants cite a number of cases involving the tort liability of a city for personal injuries or property damages sustained as a result of negligence on the part of a city in the construction, operation or maintenance of a sewer. Cook v. Kansas City, 358 Mo. 296, 214 S.W.2d 430; Donahew v. City of Kansas City, 136 Mo. 657, 38 S.W. 571;

Lucas v. City of Louisiana, Mo.App., 173 S.W.2d 629; Hannan v. Kansas City, 187 Mo.App. 315, 173 S.W. 703. In these cases these functions are classified as proprietary in nature. Jamison v. Kansas City, 223 Mo.App. 684, 17 S.W.2d 621, might be added to this list. And see Annotation: Municipal operation of sewage disposal plant as governmental or proprietary function, for purposes of tort liability. 57 A. L.R.2d 1336. The distinction between the governmental and proprietary functions of municipalities was drawn by the courts in order to impose common law liability on municipal corporations for the negligence of their agents, servants or officers in the execution of corporate powers and duties. City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, loc. cit. 546; Dillon, Municipal Corporations, 5th Ed., Vol. 1, § 109. A limitation upon the old rule of governmental immunity from liability for personal injuries inflicted by governmental agencies became necessary as a matter of sound public policy. The reasons of policy which accounted for the development of this distinction have little validity or application in resolving the present conflict of jurisdiction in the exercise of the police power by two public bodies. Such a conflict is to be resolved, and the powers of the one are to be subordinated to the powers of the other, depending upon which of the two has been granted superior powers, and not by applying a distinction[3] useful and most usually invoked in determining questions of tort liability. Recently the Supreme Court of New Jersey had before it the question whether a village which proposed to build a water storage tank upon land it had acquir-

ed in an adjoining village, would violate the latter's zoning ordinance. That court said: "We cannot agree that the distinction between governmental and proprietary functions is relevant to this controversy. The distinction is illusory; whatever local government is authorized to do constitutes a function of government, and when a municipality acts pursuant to granted authority it acts as government and not as a private entrepreneur. The distinction has proved useful to restrain the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which government today pursues to meet the needs of the citizens. Cloyes v. Delaware Twp., 1957, 23 N.J. 324, 129 A.2d 1, 57 A.L.R. 2d 1327. We see no connection between that classification and the problem before us." Township of Washington in Bergen County v. Village of Ridgewood, 1958, 26 N.J. 578, 141 A.2d 308, loc. cit. 311.

■ We conclude that in locating the sewage disposal plant the city was not subject to the county zoning order. The city was authorized to acquire the site in question for the intended purpose without regard to the zoning order and without making application to the county authorities for authorization to use the land for the intended purpose. Neither the county planning commission nor the board of adjustment had jurisdiction of the subject matter. Neither had power to rule upon the city's application. All of the proceedings before both bodies were coram non judice and void. Under the procedure for

3. This Court recently said: "Providing for drainage and sewerage is a governmental function and an exercise of the police power of the state." State on Information of Dalton v. Metropolitan St. Louis Sewer District, 365 Mo. 1, 275 S.W.2d 225, loc. cit. 230; City of Springfield v. Clouse, supra, 206 S.W.2d loc. cit. 546. And in State ex rel. St. Louis Union Trust Co., supra, this Court referred to the selection, location and procurement of a site for a public school (along with its operation) as a governmental and not a proprietary function. 304 S.W.2d, loc. cit. 902. So if it were relevant, the decision to establish a sewage disposal plant, and the selection, location and procurement of the site therefor (as contrasted with the actual construction or operation of the plant), might well be regarded as a governmental function.

review of the agency's decision provided for by § 64.120, subd. 3, the circuit court could not in the first instance, nor can this court on appeal, do anything but reverse, affirm or modify the decision of the agency. Where, as here, the agency is wholly without jurisdiction, the authority of the circuit court under § 64.120, subd. 3, is limited to the reversal of the order in question and the remand of the cause to the administrative agency with directions to dismiss the proceedings. In the original certiorari proceedings the circuit court could not nor can this court on appeal consider the application on the merits or administer equitable or other relief. Whether the complaining parties have some other remedy, such as a suit in equity based upon the theory that the board of aldermen, in exercising its discretion, acted arbitrarily, fraudulently, capriciously or oppressively, see McMurry v. Kansas City, 283 Mo. 479, 223 S.W. 615; 64 C.J.S. Municipal Corporations § 1803; or some other equitable proceeding; or an action based upon the theory of nuisance, see Annotation: Sewage disposal plant as nuisance, 40 A.L.R.2d 1177; or any of the remedies suggested in Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W.2d 66, loc. cit. 70, or otherwise, are questions not before us on this appeal.

Accordingly, the judgment of the Circuit Court of Jackson County is reversed and the cause is remanded with directions to reverse the order of the board of adjustment and remand the cause to the board of adjustment with directions to dismiss the proceedings.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.