ST. LOUIS COUNTY, Missouri, a Body Corporate and Politic, and James H. J. McNary, as Supervisor of St. Louis County, Missouri, and Herbert G. Poertner, Public Works Director of St. Louis County, Missouri, Appellants,

v.

The CITY OF MANCHESTER, Missouri, a Municipal Corporation, and Gamble Construction Company, a Missouri Corporation, Respondents.

No. 49159.

Supreme Court of Missouri,

En Banc.

Oct. 8, 1962.

---

William E. Gallagher, County Counselor of St. Louis County, Walter H. Smith, First Asst. County Counselor, for appellants.

Boedeker, Weil & McMahon and Edgar G. Boedeker, Clayton, for respondent City of Manchester.

Stamm, Millar & Neuhoff, David L. Millar and Ray E. White, Jr., St. Louis, for respondent Gamble Const. Co.

STORCKMAN, Judge.

This is an injunction suit wherein a Constitutional Home Rule Charter County seeks to enjoin a city of the fourth class from constructing and operating a sewage treatment plant and related facilities outside of the city limits in a district designated as residential under the zoning laws and building regulations enacted by the county pursuant to its home rule charter. The defendants' motion to dismiss the plaintiffs' first amended petition was sustained and the petition dismissed. Plaintiffs' motion for a new trial or, in the alternative, for a rehearing on the defendants' motion to dismiss was overruled and the plaintiffs appealed.

The plaintiff St. Louis County is a body corporate and politic organized under a Constitutional Home Rule Charter pursuant to Art. VI, § 18, of the Constitution, V.A. M.S. Plaintiffs McNary and Poertner are the supervisor and director of public works, respectively, of St. Louis County. The defendants are the City of Manchester, a fourth-class city located in St. Louis County, and the Gamble Construction Company, a Missouri corporation engaged in the general construction business. St. Louis County is a political subdivision of the state and a construction of the Constitution of this state is involved.

The defendant City of Manchester acquired by purchase a four-acre tract of land located in an unincorporated area of St. Louis County approximately one mile east of its city limits and notified St. Louis County of its intention to construct a sewage treatment plant and related facilities on the tract. The city entered into a contract with the defendant Gamble Construction Company for the erection of the plant and facilities.

The land in question is located exclusively within a district zoned residential and designated by § 1003.040 and § 1003.120 of the St. Louis County Revised Ordinances as a "B" Single Family District. Section 1003.120 of the Ordinances specifically prohibits the construction, operation, or use of any business or industry not specifically enumerated therein. The section then enumerates the businesses permitted, and the construction and operation of a sewage treatment plant and related facilities are not uses permitted or enumerated. Chapter 1101 of the St. Louis County Revised Ordinances provides that it shall be unlawful to construct a building or structure within the areas of St. Louis County outside of incorporated cities without first obtaining a building permit; the defendants have not applied for, nor been granted, a building permit by St. Louis County or any of its officials.

With respect to the powers of a Home Rule Charter County, § 18(c) of Art. VI of the Constitution provides that: "The charter may provide for the vesting and exercise of legislative power pertaining to public health, police and traffic, building construction, and planning and zoning, in the part of the county outside incorporated cities; * * *." Pursuant to this constitutional authorization, the county enacted a comprehensive zoning ordinance which designated as residential the district in which Manchester seeks to construct and operate

its sewage disposal plant and related facilities.

The City of Manchester asserts that the zoning ordinance of St. Louis County has no application and that it is authorized by law to establish its sewage disposal plant where it chooses in St. Louis County limited only by the terms of the state statutes applicable to cities of the fourth class. Section 71.680, RSMo 1959, V.A.M.S., authorizes such cities to acquire sewage disposal plants within or without the city limits, and § 79.380 provides that such cities may purchase or condemn within or without the city limits within five miles therefrom all necessary lands for sewer carriage and outfall. Art. IV, § 37, of the Constitution, on which the city relies as the authority for the legislative grants, declares that the health and welfare of the people are matters of primary public concern and provides that the general assembly shall establish a department of public health and welfare and may grant power with respect to the health and general welfare to counties, cities or other political subdivisions of the state.

St. Louis County does not undertake to forbid or prohibit altogether the construction of a sewage disposal plant in the county outside of the city limits but contends that the location and construction of the sewage disposal plant under the statutes must be made in conformity with the county's laws and ordinances regulating the planning and zoning of the unincorporated areas of St. Louis County. Under the St. Louis County zoning law, locations for sewage treatment plants and related facilities are provided in "K" districts. There is no contention that these provisions are arbitrary or unreasonable.

We are confronted here with adverse claims of two governmental units, each claiming to have the superior right and power to designate the location of the sewage disposal plant. In determining this question, we must construe the constitutional and legislative provisions together and harmonize them if it is reasonably possible

to do so. State on inf. Wallach v. Loesch, 350 Mo. 989, 169 S.W.2d 675, 681[11, 12]; City of Olivette v. Graeler, Mo., 338 S.W.2d 827, 833[6].

Planning and zoning, as well as sewage disposal, is a governmental function referable to the police power. Casper v. Hetlage, Mo., 359 S.W.2d 781; Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411 [3, 4]; Dallas v. City of St. Louis, Mo., 338 S.W.2d 39, 40[1]. Statutory provisions for planning and zoning are expressed to be for the purpose of promoting the public health, safety, morals, comfort and general welfare. See §§ 64.040 and 64.090 relating to counties of the first class, and §§ 89.020 and 89.030 relating to cities, towns and villages. The planning and zoning powers which are vested in charter counties directly by the Constitution are of similar character and in some respects such constitutional powers take precedence over the legislative grants. See Casper v. Hetlage, supra, and cases therein cited.

The essential claim of the city is that it has the right to designate the location of the disposal plant in St. Louis County by reason of §§ 71.680 and 79.380, authorizing it to acquire a sewage treatment plant beyond the city limits and giving the city the right to condemn land for this purpose. In this regard it relies primarily upon State ex rel. St. Louis Union Trust Co. v. Ferriss, Mo., 304 S.W.2d 896, and State ex rel. Askew v. Kopp, Mo., 330 S.W.2d 882. In the Ferriss case the controversy was between the zoning authority of the City of Ladue and the power of a board of education to select school sites and condemn land for that purpose. The decision in the Ferriss case did not turn solely upon the existence of the right of condemnation because the statutes expressly provided that the board of education should select and locate sites for schoolhouses, which sites could be acquired by condemnation. The statutes upon which the City of Manchester relies do not expressly bestow upon it the right to select the precise location of a sew-

age disposal plant. The grant is general; it may be within or without the city limits. Furthermore, the nature of schools and the duties of school board members are such as justify vesting in them the right to locate schools where the school population and the public interest will best be served. The state highway commission is also specifically granted the right to locate and relocate state highways. Art. IV, § 29, of the Constitution. In the Kopp case there was no controversy between the City of Raytown and Jackson County. Raytown had sought and obtained the approval of Jackson County for the location of sewage lagoons and oxidation basins. The objectors were landowners who lived in the vicinity. A footnote to the opinion at 330 S.W.2d 887 points out that Jackson County does not operate under a special county charter authorized by § 18(c) of Art. VI of the Constitution which specifically confers upon charter counties planning and zoning powers. This and the circumstances under which the litigation arose renders the Kopp case not controlling in this case.

"Briefly, eminent domain takes property because it is useful to the public, while the police power regulates the use of property or impairs rights in property because the free exercise of these rights is detrimental to public interest; * * *." 29 C.J.S. Eminent Domain § 6, p. 784. See also State ex rel. Penrose Inv. Co. v. McKelvey, 301 Mo. 1, 256 S.W. 474[2]; State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720[1]; and 18 Am.Jur., Eminent Domain, § 11, p. 639. As noted above, zoning is a regulation of the use of property referable to the police power. See also 29 C.J.S. Eminent Domain § 7, p. 789.

■ Ordinarily, the grantee of the power of eminent domain may determine the location of the facility or improvement and the land to be taken for it, but the power of selecting a location may be restricted by statute or an ordinance having the force and effect of a statutory provision. 29 C.J.S. Eminent Domain § 91, pp. 886–888; In re

Kansas City Ordinance No. 39946, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295; State ex rel. State Highway Commission of Missouri v. Shultz, 241 Mo.App. 570, 243 S.W.2d 808; State ex rel. N. W. Electric Power Coop., Inc. v. Waggoner, Mo.App., 319 S.W.2d 930, 934[3]; Tudor v. Chicago & S. S. R. T. R. Co., Ill., 27 N.E. 915, 916.

Contrary to the city's contention, the grant of municipal powers to charter counties under § 18 of Art. VI is meaningful and vests rights which cannot be taken away or impaired by the general assembly, one of which is to exercise legislative power pertaining to planning and zoning in the part of the county outside of incorporated cities. See Casper v. Hetlage, Mo., 359 S.W.2d 781; State on Information of Dalton, ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656; State on Information of Dalton v. Metropolitan St. Louis Sewer District, 365 Mo. 1, 275 S.W.2d 225; and Schmoll v. Housing Authority of St. Louis County, Mo., 321 S.W.2d 494. Casper v. Hetlage decided that zoning ordinances of St. Louis County in the respects there in issue took precedence over § 64.140 pertaining to zoning in class one counties.

The city has not called our attention to any statutes which by their terms expressly confer on the city a superior right to locate the facility regardless of the zoning ordinances of St. Louis County. Nevertheless, they say the power to do so clearly appears from the public policy of the state as expressed in Chapter 64, RSMo 1959, V. A.M.S., pertaining to zoning and planning in class one counties and §§ 71.680 and 79.-380 concerning the power of class four cities to condemn county lands for sewage disposal. On the other hand, the county points out that by an amendment made in 1945 § 64.050 provides: "If a development or public improvement is proposed to be located in the unincorporated territory of the county by any municipality, county, public board or commission, the disapproval or recommendations of the county planning commission may be overruled by the county court, which shall certify its reason there-

for to the planning commission." Further exploration of public policy is unnecessary on the limited question before us.

■ The zoning powers vested in charter counties by the Constitution are in the public interest and designed to promote the public health and welfare the same as zoning provisions of cities. Under the legislative grant, the City of Manchester may construct the sewage disposal plant and related facilities within or without its city limits. It is unlikely, however, that the city would undertake to construct such a facility in a residential portion of its own city. Experience shows that a plant like that can be highly offensive. See Flanigan v. City of Springfield, Mo., 360 S.W.2d 700. Nor has any justification been shown for permitting the sewage disposal plant to be located in a residential district of St. Louis County which, by reason of population density, the state Constitution has granted certain municipal powers including that of zoning the parts of the county outside of incorporated cities. We need not determine, however, whether the county or the city "occupies a superior position in the governmental hierarchy," (Aviation Services v. Board of Adjustment, 20 N.J. 275, 119 A.2d 761, 765) because the county ordinances and the statutes may reasonably be harmonized and permitted to stand.

■ We conclude that the zoning ordinances of St. Louis County are a lawful restriction upon the location of the sewage disposal plant and related facilities which the City of Manchester proposes to construct. By this interpretation, effect is given to the constitutional provisions, the statutes, and the ordinances of St. Louis County in their respective fields and in proper proportion. The statutes upon which the city depends do not purport to give the city the right to select the exact location in St. Louis County, and the public interest is best served in requiring it to be done in accordance with the zoning laws. There are approximately 100 incorporated cities in St. Louis County. To permit each of them or any considerable number of them to ignore valid provisions of the zoning ordinances would tend to nullify and destroy the municipal powers vested in charter counties by the Constitution. In City of Richmond v. Board of Supervisors, 199 Va. 679, 101 S.E.2d 641, it was held that statutes granting the City of Richmond the right to establish a jail beyond its corporate limits did not authorize the city to choose a location in violation of the county's zoning laws.

The judgment is reversed and the cause remanded with directions to grant the injunction prayed for in plaintiffs' first amended petition and for such other and further proceedings and relief as may be justified in the circumstances not inconsistent with this opinion.

All concur.